# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
                      )
   v.                 )      I.D. No. 1710007866
                      )
ANDRE MURRAY,        )
                      )
   Defendant.        )

Date Submitted:   October 28, 2020
Date Decided:     December 22, 2020

## ORDER

Upon consideration of Defendant's Motion for Postconviction Relief and Motion for Appointment of Counsel,[1] Superior Court Criminal Rule 61, statutory and decisional law, and the record in this case, **IT APPEARS THAT:**

1. On October 13, 2017, Wilmington Police Officer Matthew Rosaio was on patrol with other officers when he observed Defendant walking suspiciously on a Wilmington sidewalk.[2] Officer Rosaio approached Defendant and ultimately seized the firearm that Defendant was carrying in his waistband.[3]

2. On November 11, 2017, a grand jury indicted Defendant on charges of Carrying a Concealed Deadly Weapon ("CCDW"), Possession of a Firearm by a Person Prohibited ("PFBPP"), and Possession of Ammunition by a Person

---

[1] D.I. 48–49.
[2] *State v. Murray*, 213 A.3d 571, 573 (Del. 2019).
[3] *Id.*

Prohibited ("PABPP").[4]  On January 16, 2018, Defendant, represented by Ross Flockerzie, Esq., pled not guilty to these charges.[5]

3.  On February 2, 2018, Defendant moved to suppress the seized firearm.[6] Through Attorney Flockerzie, Defendant argued that "his detention and subsequent search violated his rights under the Fourth Amendment to the United States Constitution" and other provisions of law.[7]  More specifically, Defendant asserted that he was subjected to "an illegal investigatory detention . . . without reasonable articulable suspicion that he had committed or was about to engage in criminal activity."[8]  On March 29, 2018, after a suppression hearing,[9] the Superior Court granted Defendant's motion.[10]  On April 9, 2018, the State moved for reargument, but on July 26, 2018, the Superior Court denied the motion.[11]

4.  On August 16, 2018, the State appealed the Superior Court's decision to the Delaware Supreme Court.[12]  On July 10, 2019, the Supreme Court reversed, finding that Officer Rosaio "performed a legitimate *Terry* stop," which was

---

[4] D.I. 2.
[5] D.I. 6.
[6] D.I. 9.
[7] *Id.*
[8] *Id.*
[9] Officer Rosaio was the only witness who testified at the suppression hearing.  *State v. Murray*, 213 A.3d 571, 574 (Del. 2019).
[10] D.I. 14; *see generally State v. Murray*, 2018 WL 1611268 (Del. Super. Ct. Mar. 29, 2018).
[11] D.I. 19, 24.
[12] D.I. 27; *see generally State v. Murray*, 213 A.3d 571 (Del. 2019).  An attorney other than Attorney Flockerzie represented Defendant on appeal.

supported by "specific and articulable facts giving rise to his suspicion that Murray was carrying a concealed deadly weapon."[13]  On February 14, 2020, Defendant pled guilty to the CCDW charge, the State having *nolle prossed* the PFBPP and PABPP charges in accordance with the plea agreement.[14]  The Court immediately sentenced Defendant to 8 years at Level V, with credit for 180 days previously served, followed by 6 months at Level III.[15]  Defendant was also declared a Habitual Offender pursuant to 11 *Del. C.* § 4214 (a) and (c).[16]  Defendant did not appeal his conviction or sentence to the Delaware Supreme Court.

5.     On October 28, 2020, Defendant filed the instant Motions.[17]  In his Motion for Postconviction Relief, Defendant makes three arguments.[18]  First, Defendant asserts that his Fourth Amendment rights were violated because Officer Rosaio's basis for detaining him "did not rise to the level of reasonable articulable suspicion that [Defendant] was subject to seizure for violating the law."[19]  Second, Defendant alleges ineffective assistance of counsel ("IAC") because Attorney Flockerzie coerced him into pleading guilty to the CCDW charge by telling him that he could face 26 years in prison.[20]  Third, Defendant alleges IAC because Attorney

---

[13] *Murray*, 213 A.3d at 574, 579.
[14] D.I. 42.
[15] D.I. 45.
[16] *Id.*
[17] D.I. 48–49.
[18] D.I. 48.
[19] *Id.* (internal quotation marks omitted).
[20] *Id.*

Flockerzie failed to argue at the suppression hearing that the officers did not know Defendant's identity, did not see a crime being committed, and did not know whether Defendant was licensed to carry a concealed deadly weapon.[21]

6. Before addressing the merits of Defendant's arguments, the Court must consult Rule 61's procedural bars.[22] Doing so, the Court finds that Defendant's first argument—the reasonable articulable suspicion argument—was formerly adjudicated and is therefore procedurally barred pursuant to Rule 61(i)(4).[23] As noted above, the State appealed the Superior Court's decision granting Defendant's motion to suppress the seized firearm.[24] On appeal, the Supreme Court expressly found that Officer Rosaio "performed a legitimate *Terry* stop," which was supported by "specific and articulable facts giving rise to his suspicion that Murray was carrying a concealed deadly weapon."[25] Defendant cannot relitigate that issue here. Accordingly, Defendant's first argument is procedurally barred. Defendant's second and third arguments are not, however, so the Court will address the merits of those arguments.

---

[21] *Id.*

[22] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[23] Super Ct. Crim. R. 61(i)(4) ("Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred.").

[24] D.I. 27.

[25] *State v. Murray*, 213 A.3d 571, 574, 579 (Del. 2019).

7. Defendant's second argument—that Attorney Flockerzie coerced Defendant into pleading guilty—is belied by the transcript of Defendant's plea colloquy. For instance, the Court asked Defendant, "Are you *freely and voluntarily* admitting to the crime of carrying a concealed deadly weapon and admitting that you're eligible as a habitual offender as a result of the prior convictions I read to you?"[26] Defendant answered, "Yes, Your Honor."[27] In addition, the Court asked Defendant, "Has anyone *threatened or forced* you to enter into this plea?"[28] And Defendant answered, "No."[29] Absent "clear and convincing evidence to the contrary," a Defendant "is bound . . . by his sworn testimony prior to the acceptance of the guilty plea."[30] Accordingly, the Court finds that Defendant's second argument is without merit.

8. Defendant's third argument is that Attorney Flockerzie failed to argue at the suppression hearing that the officers did not know who Defendant was, did not see a crime being committed, and did not know whether Defendant was licensed to carry a concealed firearm.[31] As an initial matter, the Superior Court granted Defendant's motion to suppress, so Defendant was not prejudiced by Attorney

---

[26] Guilty Plea by Appointment Transcript, at 13:16–20 (emphasis added).
[27] *Id.* at 13:21.
[28] *Id.* at 14:4–5 (emphasis added).
[29] *Id.* at 14:6.
[30] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).
[31] D.I. 48.

Flockerzie's performance at the suppression hearing.[32]   Further, in his brief in support of Defendant's motion to suppress, Attorney Flockerzie wrote the following:

> There is no evidence police received a tip that Murray was engaging in criminal activity. There is no evidence police were investigating Murray. There is no evidence police were conducting surveillance of Murray before seeing him on this date. There is no evidence police observed Murray engage in any illegal activity.[33]

Although these assertions appeared in the brief rather than in the courtroom, it cannot be said that Attorney Flockerzie failed to raise the arguments that Defendant urged.  Lastly, in its decision on appeal, the Supreme Court noted that "the presence or absence of a license [to carry a concealed deadly weapon] need not, and should not, be considered in determining whether there was reasonable, articulable suspicion to stop [a] suspect."[34]   So even if Attorney Flockerzie had expressly argued at the hearing that the officers did not know whether Defendant had a license, that would not have been a winning argument on appeal.  Accordingly, the Court finds that Defendant's third argument is without merit.

9.      The Court will now address Defendant's Motion for Appointment of Counsel.[35]  Rule 61(e)(2) sets out the applicable standard because Defendant pled

---

[32] *See generally State v. Murray*, 2018 WL 1611268 (Del. Super. Ct. Mar. 29, 2018).
[33] D.I. 9.
[34] *State v. Murray*, 213 A.3d 571, 580 n.55 (Del. 2019).
[35] D.I. 49.

guilty and has not previously filed a motion for postconviction relief.[36]  Pursuant to Rule 61(e)(2), the Court may appoint counsel *only if* it determines that

> (i) the conviction has been affirmed by final order upon direct appellate review or direct appellate review is unavailable; (ii) the motion sets forth a substantial claim that the movant received ineffective assistance of counsel in relation to the plea of guilty or nolo contendere; (iii) granting the motion would result in vacatur of the judgment of conviction for which the movant is in custody; and (iv) specific exceptional circumstances warrant the appointment of counsel.[37]

As discussed above, Defendant's Motion for Postconviction Relief fails to assert a substantial IAC claim.  Accordingly, the Court must deny Defendant's Motion for Appointment of Counsel.

**NOW, THEREFORE, IT IS ORDERED** that Defendant's Motion for Postconviction Relief and Motion for Appointment of Counsel are **DENIED**.

*Jan R. Jurden*
_____
Jan R. Jurden, President Judge

Original to Prothonotary

cc:  Andre Murray (SBI# 00275506)
Erika R. Flaschner, Esq. (DAG)

---

[36] Super Ct. Crim. R. 61(e)(2) (governing "[f]irst postconviction motions in guilty plea cases").
[37] *Id.*

7